McKinney, J.,
delivered the opinion of the Court.
The complainant’s bill was dismissed on demurrer. The bill seeks to subject a lot in the town of Nashville, to the satisfaction of a balance of unpaid purchase money, by force of an express lien reserved upon the face of the conveyance.
It appears, from the allegations of the bill, that, on the 1st day of December, .1848, .the defendant, Kirk-man, sold and conveyed the lot' in question to the defendant, Purcell, at ■ the price of $1500. At the time of said sale, Kirkman, the vendor, was indebted to the complainant; and it was mutually agreed between Kirk-man, complainant, and Purcell, that the- latter, in part discharge of the purchase money of. the lot, due to Kirkman, should-assume’and become., responsible for. the debt due from Kirkman to complainant. And, in pursuance of this agreement, Purcell executed two notes, one for $525,00, and the other for $825,00, “ payable in stone-work, to be done at any time called for, after the *148 1st 'of July, 1849.” By this arrangement, and the payment of $650,00 in hand, by Purcell to Kirkman, the purchase money of said lot was fully paid to Kirkman, and the indebtedness of the latter to complainant was extinguished. The deed of conveyance from Kirkman to Purcell, which was executed at the time of the contract, recites the execution of said two notes by Purcell to complainant, in part discharge of the purchase money of the lot; and expressly provides that the sums of money specified in said notes, “ shall be and remain a lien upon said lot or parcel of land, until said sums shall have been fully satisfied, discharged and paid; and the said William Purcell, upon the payment of said notes, is to have and to hold the aforesaid lot or parcel of land,” &c. This deed appears not to have been proved or registered until January, 1852, which was after the sale and conveyance to Cheatham, hereafter to be noticed. '
It further appears from the bill, that, on the 19th of January, 1850, said lot was sold at execution sale, as the property of said Purcell, and was purchased by one Northrop. The sheriff’s deed to Northrop, in describing the lot, refers to it as “ being the same conveyed by John Kirkman to the said William Purcell, by deed, (unregistered,) on the 1st day of December, 1848.” On the 14th of January, 1841, Northrop sold and conveyed said lot to E. R. Cheatham, and in his deed of conveyance-he covenants, amongst other things; that said lot “is unincumbered, with the exception of the balance of the purchase money due from one William Purcell, on the purchase of said lot of ground by said Purcell from John Kirkman, on the 1st day of December, 1848.” And in the *149 covenant of warranty, lie warrants “ against the lawful claim’of all persons, except such as may claim by virtue of the lien of said John Kirkman on said lot of ground, for the unpaid purchase money due from the said William Purcell on his purchase aforesaid from Kirkman.”
The bill exhibits a copy of an instrument executed by John Kirkman to Cheatham, on the 17th of August, 1852, in which the former acknowledges the payment to him, by Cheatham, of the balance of the purchase money due on the two before mentioned notes, executed by Purcell to complainant, and in consideration thereof, he relinquishes to Cheatham all his interest in said lot.
The bill charges that, in fact, Cheatham paid nothing to Kirkman for said release, and denies that Kirkman had any interest in the notes, or in the lien reserved to secure their payment, or that he had any power to release or discharge said lien. It is further charged, in substance, that both Korthrop and Cheatham purchased with full knowledge of the fact that a portion of the purchase money of the lot remained' due to complainant, and, also, with knowledge of the existence of the lien, to secure the payment thereof: and that they, respectively, held said lot in subservience to, and consistently with the right of the complainant, and not adversely thereto; and that in the summer of 1857, Cheatham had promised to pay complainant the remainder of such purchase money.
It is further alleged that the note for $325,00 .still remains unpaid; and complainant states that “ he demanded payment of said note long since, and payment was refused.”
The bill seeks to subject said lot to the satisfaction *150 of the amount of said note, by enforcing tbe lien, which, it is alleged, was reserved for the sole benefit of the complainant. Purcell, Cheatham and Kirkman, are made defendants to the bill. The demurrer to the bill is filed, on behalf alone, of Cheatham.
Taking the allegations of the bill to be true, for the present, we think the Chancellor erred in allowing the demurrer.
The pretended release of Kirkman might be left out of view, as entitled to no consideration in the determination of the main question intended to be raised by the demurrer. Upon the facts charged in the bill, the release is a mere nullity. Kirkman held the lien as a naked trustee for the complainant. No lien could, possibly, have existed in his own favor, for the simple reason that, by the arrangement stated in the bill, his claim for the purchase money of the lot was fully satisfied and extinguished at the time of the sale. And Cheat-ham, as is substantially charged, having knowledge of the facts, cannot avail himself of the release for any purpose. 'How it might be, if Cheatham occupied the footing of a bona fide purchaser without notice, need not be stated. It is clear, however, that Kirkman is a proper party defendant, either for the purpose of having the release annulled, or for the purpose of having a decree against him for the amount of the unpaid purchase money, which, by his deed, he acknowledges the reception of from Cheatham. For, although he had no right to receive the money, yet, having done so, he must be treated as holding it in trust for complainant. And his acknowledgement being under seal would be an estoppel upon him, at law, to deny the fact of having *151 received the money; and he will he alike precluded in equity, for he cannot, in -the latter forum, he heard to allege that he made the release without consideration, with a view to cut off the lien; for this would have been, on his part, a palpable fraud upon the rights of the complainant, which he will not be heard to insist upon, in exoneration of his liability.
But the Chancellor allowed the demurrer, as is stated in the argument, on the ground that the complainant’s equity was barred by the statute of limitations. This conclusion is erroneous, we think, for several reasons.
That it wras competent to the parties, by mutual agreement, to create the lien declared in the deed from Kirkman to Purcell, for the benefit of the complainant, admits of no doubt upon general principles of law. But the exact nature and legal effect of a lien thus created, seems not to be well defined, in any of the books to which we have had access. It certainly' is not, in all respects, equivalent to a mortgage; because the legal estate passes by the conveyance, and vests in the purchaser, notwithstanding the lien reserved in the deed.
And yet it must be regarded as, in some respects, different from, and as possessing greater efficacy than the vendor’s lien, properly' so called. The latter, where the legal estate has been conveyed to the vendee, is the mere creature of a court of equity. It exists only by implication of law; and is in the nature of a trust only, and not a specific lien upon the land conveyed, until a bill has been filed to enforce it. 10 Hum., 371.
But an express lien, created by contract and reserved on the face of the conveyance, though not a mortgage, must at least be regarded as a spécific lien, forming an *152 original substantive charge upon the estate thus conveyed; and as affecting all persons who may subsequently come into possession of the estate with notice, either actual or constructive, of its existence. This must necessarily be so; for even the implied lien of the vendor exists not only against the purchaser and his heirs, but, also, against all persons claiming under him, with notice of it, though they be purchasers for a valuable consideration. But this implied lien does not exist against a bona fide purchaser, without notice; neither will it be allowed to prevail against a creditor who may have acquired a judgment, or execution lien upon the property, before a bill has been filed by the vendor to enforce his lien. 10 Hum., 371, 376. But not so of the lien created by contract, as in the present case. If the conveyance reserving the lien has been duly registered, such lien will be operative against creditors, bona fide purchasers, and all other persons, without regard to actual notice.
It is true, in the present case, that the deed from Kirkman to Purcell, reserving the lien, was not registered until after the sale by Northrop to Cheatham. But this is of no consequence, in this particular case, because the deed from Northrop to Cheatham expressly recognizes the existence of the lien declared in Kirk-man’s deed.
If this view of the nature and effect of the lien in question be correct, it certainly does not create between the parties a relation similar to that of a mortgage, as regards the application of the statute of limitations. The relation of the purchaser is more analogous to that of a trustee, by express contract, who may disclaim the trust; and after such disclaimer, and a knowledge thereof *153 brought home to the cestui que trust, may claim and hold adversely to him. This is putting the case in the most favorable point of view for the defendant, Cheatham. But this will not avail him; as the presumption of law is, that he is holding under and consistently with the trust, until the contrary is affirmatively shown by him. Upon this presumption alone the complainant might have safely rested, in answer to the demurrer, without the aid of the affirmative allegation in the bill, that the defendant had held, and was holding, in subordination to his lien.
It is altogether a mistaken conclusion, that, under the second section of the act of 1819, the complainant’s equity is barred by the mere lapse of seven years, before filing his bill, irrespective . of the character of defendant’s possession. To create a bar, under that section, the possession must be, in legal contemplation, adverse. Such has been the uniform course of decision since the case of Dyche v. Gass, 3 Yer., 397. And the case relied on, (Ray v. Groodman, 1 Sneed, 586,) when carefully examined, will be found to be in accordance with previous adjudications upon the statute. '
But, again: The case of Ray v. Goodman settles, that the purchase money must have been due seven years, before the filing of the bill, to enforce the payment thereof, by a sale of the land.
In other words, a cause of action must have existed for the full period of seven years before suit brought, which might have been asserted at any time within that period, in order to create a bar. This cannob be predicated of the case under consideration, from the face of the bill.
*154 The notes were “payable in stone-work, to be done at any time called for, after the 1st of July, 1849.” We take it to be too clear to require either authority or argument, that no action could have been maintained on these notes, without a previous request to do the work stipulated to be done. Until such demand, or request, made and refused, there was no default, or breach of contract, on the part of the maker of the notes; and, consequently, no right, or cause of action, on the part of the complainant. The principle, that in contracts for the payment of money, on demand, the bringing suit is all the demand required, has no application to a case like the present.
Erom the statement in the bill, that payment was demanded “ long since,” and refused, it cannot be inferred that it was demanded more than seven years before suit. This would be to reverse the rule, that, upon a demurrer, every reasonable presumption is to be made in favor of, rather than against the bill. It is only in cases where, it clearly appears, from the face of the bill, that the complainant’s equity is barred, that the bill will be dismissed upon demurrer, for that cause.
Decree reversed, and cause remanded.